IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| THOMAS MCCLAIN GUINN, | ) | |
| Plaintiff, | ) | Civil Action No. 7:18-cv-00274 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| CHARLES CRUMPLER, *et al.*, | ) | United States District Judge |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff Thomas McClain Guinn, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983. He asserts various claims against the remaining five defendants: S. Massenburg, Melvin Davis, K. Henderson, Charles Crumpler, and L. Gibbs.[1] His amended complaint (Dkt. No. 8) is the operative complaint in the matter,[2] and defendants have moved for summary judgment as to all claims.

Guinn's amended complaint does not clearly state what claims he is bringing against who, but the court construes as asserting claims under 42 U.S.C. § 1983 alleging:

(1) a violation of his due process rights under the Fourteenth Amendment,[3] against Massenburg, Davis, and Crumpler;

---

[1] Three other defendants—Clark, Bateman and Marion—were named in the original complaint, but they were either not included in his amended complaint or were voluntarily dismissed by Guinn. (Dkt. Nos. 8, 50, 52.)

[2] The claims in the original and amended complaint overlap to a large extent, and, where appropriate, the court has considered allegations from the original complaint to give context to Guinn's claims. Where a claim appears solely in the original complaint, however, the court does not consider it part of the case. Moreover, it appears from defendants' motion that they have moved for summary judgment based on the claims in the amended complaint, and Guinn's opposition briefs do not express any disagreement with that approach. Likewise, Guinn attempts to raise new claims for the first time in his most recent opposition, such as claims under the Virginia constitution and claims that Massenburg and Davis violated his First Amendment rights by preventing his access to the courts. These claims were not included in Guinn's earlier complaints and are not part of this case.

[3] Guinn also asserts his Fifth Amendment rights have been violated, and defendants treat his due process claims as being brought under both the Fifth and Fourteenth Amendments, but the relevant due process protections here are grounded only in the Fourteenth Amendment. *See United States v. Hornsby*, 666 F.3d 296, 310 (4th Cir. 2012) (explaining that "the Fourteenth Amendment's Due Process Clause is a limitation on state conduct," while the "due process protections against the federal government are found in the Fifth Amendment"). Any claims premised on the Fifth Amendment are therefore dismissed.

(2) retaliation based on his exercise of First Amendment rights, against Massenburg, Henderson, Crumpler, and Gibbs;

(3) a violation of his Eighth Amendment rights, against Henderson, based on a strip search he conducted of Guinn and the confiscation of Guinn's shorts; and

(4) a violation of his First Amendment right of access to the courts, against Gibbs, alleging that she did not timely send out his legal mail.

(*See generally* Am. Compl.)[4]

In opposing the summary judgment motion, Guinn states that, in addition to his constitutional claims, he also is asserting state-law claims and he cites to two statutes, neither of which create causes of action. First, he cites to Virginia Code § 8.01-243.2, which simply provides a statute of limitations and requires exhaustion for claims brought by persons confined in a state or local correctional facility relating to the conditions of his confinement. Second, as to defendant Davis, Green Rock's warden, Guinn cites to Virginia Code § 8.01-247.1, which sets out Virginia's statute of limitations for claims of libel, slander, insulting words, or defamation.

Pending before the court is defendants' motion for summary judgment (Dkt. 31), which is fully briefed and ripe for disposition.[5] Upon review of the record, the court concludes that the motion for summary judgment should be granted. Accordingly, judgment will be entered in

---

[4] Guinn's original complaint framed his claims differently, but it often sought to bring a claim under an Amendment that was clearly inapplicable to his allegations. The court construes his claims in a way that most closely aligns with the right arguably implicated. For example, he states that Gibbs violated his Eighth and Fourteenth Amendment rights in interfering with his legal mail; the court construes that as a First Amendment claim. Likewise, he claims that Massenburg's rejection of his grievances is a violation of the Eighth Amendment; the court construes those allegations as a due process claim under the Fourteenth Amendment and a retaliation claim.

[5] Guinn has filed two oppositions, both of which are sworn and signed under penalty of perjury. In the first (Dkt. No. 36), he primarily sought discovery prior to being required to respond, and U.S. Magistrate Judge Hoppe subsequently granted him some of that discovery. In his most recent opposition (Dkt. No. 77), Guinn offers his substantive response. He also suggests that Massenburg's discovery responses are incomplete and that he believes "she is in fact hiding something which will incriminate her." (Pl.'s 2nd Opp'n 1, Dkt. No. 77.) And he complains that he has not been given discovery about whether Crumpler was also involved in the reference to Guinn as "Johnny Cochran." (*Id.* at 6.) He has not filed a separate motion to compel, however, and he presents no facts or evidence to suggest that defendant or counsel have withheld otherwise responsive evidence, only his speculation.

favor of defendants as to all of Guinn's federal claims, and the court will decline to exercise jurisdiction over any state-law claims and dismiss them without prejudice.

## I.  BACKGROUND

Guinn is a Virginia inmate who, at all relevant times, was held at the Green Rock Correctional Center ("Green Rock"), where he remains incarcerated.  In his amended complaint, he describes a "continuous series of violations" in which defendants have "been negligent, violated [his] rights and denied [him] due process protection."  (Am. Compl. ¶ 2.)

### A.  Guinn's Use of Grievance Procedure & Other Allegations Against Davis

Many of Guinn's allegations focus on what he alleges were attempts to interfere with his use of the grievance process at Green Rock.  Indeed, his allegations against Massenburg stem almost exclusively from her treatment of his grievances, the sole exception being the disciplinary charge she brought against him.  Likewise, most of his allegations against Warden Davis stem from Davis's involvement in the grievance process.  In general terms, he alleges that Massenburg repeatedly improperly handled his grievances, by either denying them incorrectly, not answering them, or otherwise not following Virginia Department of Corrections ("VDOC") operating procedures concerning his grievances.  (Am. Compl. ¶¶ 3, 5; Compl. 14–16, Dkt. No. 1; *see also* Pl.'s 2nd Opp'n 2–5, Dkt. No. 77.)

Attached to the summary judgment motion is an affidavit by Massenburg, who is the Institution Ombudsman at Green Rock.  (Massenburg Aff. ¶ 1, Dkt. No. 32-1.)  She attaches to her affidavit both a copy of VDOC Operating Procedure 866.1, which sets forth the applicable grievance procedure, and approximately one hundred pages of Guinn's grievance-related documents.  These include a summary of his grievances since he arrived at Green Rock on June 13, 2017, (*id.*, ¶ 4), as well as some of the actual grievance documents that relate to his allegations in this lawsuit.  In her affidavit, Massenburg describes the general policy concerning

exhaustion of grievances and discusses Guinn's failure to exhaust certain of his claims.

She also repeatedly avers that "Guinn's grievances have been processed in accordance with the offender grievance policy." (*Id.*, ¶¶ 9, 17.)  She states that she has "not harassed Guinn or retaliated against him for any reason," and she notes that if a regular grievance is not accepted for intake by her, Guinn may appeal that decision to the Regional Ombudsman. (*Id.*, ¶ 17.)  She also notes that, as of the date of her affidavit on January 8, 2019 (which was approximately eighteen months after Guinn arrived at Green Rock), she had "accepted and processed 85 informal complaints and 9 regular grievances for Guinn, not including those that have been rejected for not meeting the intake criteria." (*Id.*, ¶ 9.)

As to Davis, Guinn complains that he "contributed to the denial of due process and infliction of cruel and unusual punishment," by upholding the grievances and thereby allowing staff to harass Guinn. (Compl. 13; Am. Compl. ¶ 5.)  With regard to his claims against Davis, he also specifically identifies Davis's alleged failure to investigate Henderson's strip search, discussed *infra*. (*Id.*)  Lastly, he points to Davis's upholding of his disciplinary convictions and his alleged reference to Guinn as "Johnny Cochran" on a grievance form.[6]

## A.    Disciplinary Charges and Hearings

Guinn received two disciplinary charges that he contends were false and filed against him in retaliation for filing lawsuits and grievances.  The first was initiated by Massenburg.  Specifically, on April 10, 2018, she charged Guinn with disciplinary offense #222, for using

---

[6] In his original complaint, Guinn discussed specifically Davis's response to a grievance Guinn filed concerning "the Air Units/Ventilation System in the cells blowing directly over the top of the toilets," which he complained exposed him to hazardous living conditions and the "potential for a negative long-term health" effects. (Compl. 4.)  He also challenged Davis's decision to place him on a grievance limitation, limiting the number of informal complaints and grievances he was permitted to file.  These allegations do not appear in the amended complaint.  In any event, to the extent these claims remain in the case, they are based on an allegation that Davis improperly handled grievances or denied Guinn access to the grievance process, and they fail for the reasons discussed *infra* at Section II.B.1.

vulgar or insolent language or gestures toward an employee.  The charge was based on language he included in an offender request in which he referred to "Massenburg's unqualified negligence and ignorance" and also wrote: "I know you have a childish pheble[7] mind and like to play games like a child." (Dkt. No. 32-1, at 78.)  Guinn was found guilty of this charge and given a $15.00 fine.  (Am. Compl. ¶¶ 12–13.)  Davis upheld the charge on appeal.

The second disciplinary charge was filed by Bateman, who is no longer a defendant.  In this April 28, 2018 charge, Bateman accused Guinn of improperly using a typewriter to send a typed letter to the Regional Ombudsman, when the typewriters are to be used only for preparing legal documents.  (Bateman Aff. ¶¶ 1, 4.)  Guinn was found guilty of the charge, and a $3 fine was imposed.  Davis later upheld it, as did the Regional Administrator.

The policy at issue clearly disallows inmates' use of the typewriter for such a letter: typewriters are available "for preparing legal documents only and are not to be used for typing personal letters, request forms, grievances, disciplinary appeals, etc." (Bateman Aff., Encl. A.)  Nonetheless, Guinn claims that this disciplinary charge was false because he intended to later submit the document to a court as evidence.  (Am. Compl. ¶ 14.)  Based on his own definition of a "legal document," Guinn argues that Davis's upholding of the second charge was improper.  He also contends that Davis committed slander by allegedly referring to Guinn as "Johnny Cochran" on paperwork related to this charge.  (*See* Dkt. No. 8-2 at 3 (a grievance form with handwritten notes, including one saying "Johnny Cochran," although with no clear indication of who wrote the notes).)  Guinn contends that Davis's calling him "Johnny Cochran" was a "racial slur" and "insolent disrespect towards Guinn, [who] is 'White.'" (Am. Compl. ¶ 15.)

---

[7] The court presumes Guinn meant "feeble."

**B. Strip Search by Henderson**

Guinn's allegations against Henderson, who is a Corrections Sergeant at Green Rock, stem from a single incident. (Am. Compl. ¶ 4; Henderson Aff. ¶ 1, Dkt. No. 32-2.) Specifically, on or about February 6, 2018, Henderson strip-searched Guinn as Guinn was leaving the institutional law library. He did so upon orders from the Major (Chief of Security) to conduct random searches of offenders leaving the law library to search for drug contraband being passed in the law library. (Henderson Aff., ¶ 5.) During the search, Henderson found that Guinn had a pair of gray shorts that appeared to have been altered by adding a string to the waistband. Henderson prepared a confiscation report and confiscated the shorts. The shorts were returned two days later to Guinn, after it was determined by the property staff that the shorts had not been altered. (*Id.*, ¶ 5 & Encl. A.)

Guinn claims that this incident deprived him of his property for no legitimate reason. (Compl. at 8.) He further states that, because he did not own sweatpants and his pants were "very uncomfortable and irritate [his] legs," Guinn had to wear his boxers in his cell. From this, he states that Henderson "forced" him into a "state of undress" and exposed him to possible sexual harassment at the prison. (*Id.*) Guinn also states that Henderson ordered the shorts to be held in personal property for an additional two weeks after they were verified to be okay, (Compl. ¶ 4), although he admits in his opposition that he actually received them back approximately two days later, allegedly in response to telephone complaints from Guinn's family members. (Pl.'s 2nd Opp'n 8.)

Henderson denies that he strip-searched Guinn as retaliation for complaining about Massenburg or to respond to Guinn's "intention to file a civil action against Massenburg," (Am. Compl. ¶ 5). (Henderson Aff. ¶ 4.) Indeed, he avers that at that time, he did not have any knowledge of complaints or grievances Guinn had filed regarding Massenburg, nor did he recall

Guinn ever complaining to him about Massenburg.  (*Id.*)  He further avers that he has seen Guinn

before, but he does not work around him on a daily basis.  (*Id.*, ¶ 6.)

Guinn states that five minutes after the strip search occurred, he complained to defendant

Davis.  Davis said he would look into it, but did not do so "until several days later."  (Am.

Compl. ¶ 5; Compl. at 11–12.)

## C.  Gibbs's Alleged Tampering of Legal Mail and Crumpler's Refusal to Provide Guinn with a Copy of Mail Log

With regard to defendant Gibbs, Guinn alleges that she improperly handled his outgoing

legal mail that was being sent to the Commonwealth Attorney of Pittsylvania County, the Circuit

Court Clerk of Pittsylvania County, and the Court of Appeals of Virginia.  (Compl. 9–10.)  He

claims that on Sunday evening, February 11, 2018, he placed three manila envelopes addressed

to those entities in the mailbox for pickup on Monday, February 12.  After he did not get a

receipt from the mail, Gibbs allegedly advised him that the first two were mailed on February 12,

but the larger one was not mailed until February 13.

In the grievance in which he complained about this, he did not reference a delay in

mailing dates; instead, he provided a note from the Pittsylvania County Circuit Court and alleged

that there was no date stamp or mark from the institution on his envelope, only his handwritten

statement of "legal mail" written by Guinn.  (*See* Dkt. No. 32-1, at 64–72.)  According to the

documents related to that grievance, in responding to Guinn's Level II grievance, the Regional

Administrator contacted that court's clerk's office on April 23, 2018, and he confirmed with a

deputy clerk that the envelope contained the disclaimer from Green Rock's postage meter and

that the date had been cut off after it was received in the Clerk's office.  Thus, the Regional

Administrator concluded that the mailroom had run the envelope through the postage meter prior

to mailing per procedure, and the disclaimer that appears included the date from the postage

meter. Based on this investigation, the Regional Administrator upheld the Level I grievance decision that the grievance was unfounded and that procedures were correctly followed. (Dkt. No. 32-1 at 72.)

In his amended complaint, Guinn suggests that Gibbs withheld or delayed Guinn's legal mail in retaliation for Guinn's complaint and legal actions against Gibbs's fellow staff members, Massenburg, Henderson, David, and Marion. Guinn also speculates that the legal mail "may have been opened and read to get . . . insight on what Guinn was filing/attempting to file." (Am. Compl. ¶ 7, Dkt. No. 8.) He presents no evidence about Gibbs reading his mail in February 2018, and he did not include that allegation in his grievance concerning the incident.

Guinn's allegations against Crumpler are that Crumpler "attempted to cover" for Gibbs and told Guinn that the legal mail had gone out and was handled properly, but he refused to give Guinn a computer printout of the "legal mail log." "This hindered Guinn's legal rights to Due Process by violating the Federal and State Regulations which also govern all U.S. mail." (Am. Compl. ¶ 8.) Guinn appears to be arguing that Crumpler's denial of the mail log also was in retaliation for his filing of grievances or lawsuits.

In an affidavit dated December 2018 and submitted with the summary judgment motion in March 2019, Crumpler explains that he oversees the operation of the Green Rock mailroom. He states that, to his knowledge, "Guinn's mail was processed in accordance with policy and routine operating procedures." (Crumpler Aff. ¶ 5, Dkt. No. 32-4.) He also notes that, after Guinn filed an informal complaint and a grievance in which he alleged that his mailings were not properly date-stamped, an investigation occurred and deemed the grievance unfounded. (*Id.*) During that investigation, Guinn was provided documentation showing that his legal mail had been sent out on February 12, 2018, and February 13, 2018. (*Id.*) Crumpler's affidavit explains that copies of the incoming and outgoing legal mail logs are not provided to offenders because

they may contain the signature of other offenders and information regarding correspondence received by them.  (*Id.*, ¶ 6.)

## II.  DISCUSSION

### A.  Summary Judgment Standard

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party.  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).  In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Id.* at 247–48.  Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor.  *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990) (quoting *Anderson*, 477 U.S. at 249–50).

Defendants' motion requests summary judgment on a number of different grounds.  (*See* Mem. Supp. Mot. Summ. J. 2, Dkt. No. 32.)  The court does not address all of them, but

concludes that summary judgment is appropriate for the reasons stated below.[8]

## B. Due Process Claims

### 1. Massenburg and Davis

As noted, Guinn's due process claims against Massenburg stem exclusively from her treatment of his grievances, and most of his allegations against Davis also stem from his involvement in the grievance process. These claims against them fail as a matter of law pursuant to clear Fourth Circuit precedent. Specifically, the Fourth Circuit held in *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994), and reiterated more recently in *Booker v. S.C. Dep't of Corrs.*, 855 F.3d 533 (4th Cir. 2017), that "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Id.* at 541; *see Adams*, 40 F.3d at 75 ("The Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Relying on *Adams*, district courts, including this one, have repeatedly held that a prison official's failure to comply with a grievance procedure is not actionable under § 1983. *E.g.*, *Brown v. Va. Dep't of Corrs.,* No. 6:07-CV-33, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009) ("[T]here is no liability under § 1983 for a prison administrator's response to a grievance or appeal."); *Oliver v. Gray*, No. 7:09-CV-00004, 2009 WL 366150, at *2 (W.D. Va. Feb. 12, 2009), *aff'd*, 360 F. App'x 417 (4th Cir. 2010) ("Because a state grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the state's grievance procedure is not actionable under § 1983.").

---

[8] Except as to the one claim that arose *after* Guinn filed suit (Massenburg's opening of his legal mail in October 2018, *see infra* Section II.E.), the court does not address defendants' failure-to-exhaust arguments. In light of the allegations that defendant Massenburg improperly interfered with Guinn's ability to use the grievance system, the interest of judicial efficiency warrants simply addressing the merits of his claims. *Cf.* 42 U.S.C. § 1997e(c)(2) (allowing the court to dismiss underlying claims without first requiring the exhaustion of administrative remedies). Because the court is granting their summary judgment motion, defendants are not prejudiced by this approach.

Thus, all of Guinn's claims against Massenburg and Davis that allege irregularities or deprivations of the grievance procedure cannot give rise to liability under Section 1983. Massenburg and Davis are entitled to judgment as a matter of law on the due process claims against them.

The only other possible basis for Guinn's due process claim against Davis is based on Davis's affirmance of Guinn's disciplinary convictions, which resulted in two minimal fines. (Am. Compl. ¶¶ 11–16.) There are disagreements among courts as to whether such minimal fines even give rise to a constitutionally protected liberty or property interest. *See Anderson v. Dillman*, 824 S.E.2d 481, 483–84 (Va. 2019) (noting the disagreement among federal courts and discussing rationales underlying the decisions). Even if a minimal fine does give rise to such an interest, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Instead, due process requires only that the inmate receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563–67)). Guinn does not allege that any such protections were not provided, nor does he identify any other defect in the disciplinary process. He alleges only that the charges were retaliatory. Quite simply, he fails to identify a due process violation in the disciplinary process, let alone offer supporting evidence of one. Accordingly, summary judgment as to the due process claims against Davis related to Guinn's disciplinary charges will be granted.

### 2. Crumpler

Guinn's due process claim against Crumpler is similarly infirm.  Guinn alleges that Crumpler "hindered [his] legal rights to his due process" by covering for Gibbs and refusing to give Guinn a copy of the legal mail log computer printout.  (Am. Compl. ¶ 8.)  Crumpler's refusal to provide a copy of the legal mail printout to Guinn, which was consistent with VDOC policy, does not give rise to a due process claim.  Guinn has no protected liberty or property interest in that printout, nor has he identified any authority to claim that he has such a right.  Absent a constitutionally protected liberty or property interest, no due process violation occurs regardless of any deficiencies in procedure.  *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015) ("To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law.").  Thus, Crumpler is likewise entitled to summary judgment in his favor as to the due process claim against him.

### C. Retaliation Claims

The court construes Guinn's amended complaint as asserting retaliation claims against Henderson, Gibbs, Crumpler, and Massenburg.  A plaintiff asserting a claim that he experienced government retaliation for his First Amendment-protected speech must establish three elements: (1) the plaintiff engaged in constitutionally protected First Amendment activity; (2) the defendant took an action that adversely affected that protected activity; and (3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct.  *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 738 (2018).  Under the *McDonnell Douglas* framework,[9] those three elements constitute a prima facie case of retaliation.

---

[9] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250–51 (4th Cir. 2015). The burden of production then shifts to the defendant to show that he had a legitimate non-retaliatory reason for the adverse action. *Id.* If that showing is made, then the plaintiff must produce sufficient information to show he has been the victim of intentional retaliation. *Id.* at 252 (citations omitted). To do so, a plaintiff must establish "both that the [given] reason was false and that [retaliation] was the real reason for the challenged conduct." *Id.* (citations omitted).

As to the first element, prisoners have a "First Amendment right to be free from retaliation for filing a grievance" under the prison's established grievance procedure. *Booker*, 855 F.3d at 541. With regard to the second element of this claim, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). To establish the third element, causation, a prisoner must provide evidence that supports a reasonable inference that a defendant took the alleged retaliatory action because of the prisoner's exercise of a constitutionally protected right. *See Adams*, 40 F.3d at 75. He must show that the protected activity was the but-for cause of the adverse action alleged. *Foster*, 787 F.3d at 252; *Gregg-El v. Doe*, 76 F. App'x 274, 275 & n.2 (4th Cir. Jan. 3, 2019) (citing to *Foster* in addressing the causation standard in the context of a prisoner's retaliation claim).

The court must treat an inmate's claim of retaliation by prison officials "with skepticism because every act of discipline by prison officials is by definition retaliatory in the sense that it responds directly to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996).

Applying those standards to Guinn's claims, it is clear that defendants are entitled to summary judgment. As to the first element, the analysis is the same as to all of the retaliation

defendants. Guinn alleges that defendants retaliated against him because he filed grievances against Massenburg or others. Thus, Guinn's claims satisfy the first element; his filing of grievances constitutes protected activity under the First Amendment. *See Booker*, 855 F.3d at 545–46. The court addresses the second and third elements separately by defendant.

### 1. Massenburg

Guinn alleges that the retaliatory action taken against him by Massenburg was the filing of a disciplinary charge against him. The Fourth Circuit has recognized that the filing of a *false* disciplinary action against a prisoner can satisfy the second element of a retaliation claim, which requires an adverse action sufficient to chill First Amendment rights. *See Booker v. S.C. Dep't of Corrections*, 583 F. App'x 43, 44 (4th Cir. 2014) ("*Booker I*") (concluding that the filing of a false disciplinary charge unsupported by any evidence warranting that charge "would likely deter prisoners of ordinary firmness from exercising their First Amendment rights").

The charge filed by Massenburg, however, was not false, and this fact alone dooms Guinn's claim. *Richardson v. Ray*, 492 F. App'x 395, 396 (4th Cir. 2012) ("Absent some evidence or claim that his disciplinary conviction was improperly obtained, Richardson's assertions that the initial charge was false cannot state a claim.") (citations omitted). First of all, the charge was upheld on appeal, and, as already noted, he has not alleged with particularity any due process violation in the disciplinary hearing itself. He simply references vague and general violations of due process.

Furthermore, the written grievance Guinn submitted is conclusive evidence that he, in fact, committed the misconduct with which Massenburg charged him. As noted, in an offender request addressed to Massenburg, he referred to "Massenburg's unqualified negligence and ignorance" and also wrote: "I know you have a childish [feeble] mind and like to play games like a child." (Dkt. No. 32-1, at 78.) Guinn does not deny that he wrote those words, but he denies

14

that his words were insolent.[10]

No reasonable jury, however, could find that his words were not insolent. Instead, it is indisputable that such language is "insolent," which means "boldly rude or disrespectful; contemptuously impertinent; insulting." *Insolent*, Dictionary.com, https://www.dictionary.com/browse/insolent?s=t (last visited April 1, 2020); *see also Insolent*, Merriam-Webster, https://www.merriam-webster.com/dictionary/insolent (last visited April 1, 2020) (defining as "insultingly contemptuous in speech or conduct" or "exhibiting boldness or effrontery"). Thus, Guinn cannot prove that a false disciplinary charge was filed against him, and the filing of a meritorious charge is insufficient to support a retaliation claim. *See Richardson*, 492 F. App'x at 396 (dismissing retaliation claim where prisoner admitted he engaged in the misconduct charged in the disciplinary violation); *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990) ("While a prisoner can state a claim of retaliation by alleging that disciplinary actions were based upon false allegations, no claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform."); *Edwards v. Kanode*, No. 7:19CV00188, 2020 WL 1066343, at *5 (W.D. Va. Mar. 5, 2020) (granting summary judgment for defendants on retaliation claim where plaintiff admitted the misconduct for which he was charged).

Moreover, Massenburg has flatly denied that she brought the charge in retaliation, and Guinn has not presented any facts to show that she had a retaliatory motive. So, even if he could put forth sufficient evidence to state a prima facie case—which he has not—she has given a legitimate, non-retaliatory reason for the issuance of the charge: his misconduct. Guinn has not presented any evidence to show that the reason given was a mere pretext for retaliation. Not

---

[10] He also counters that Green Rock staff members use similarly disrespectful words in talking to him and other inmates, but that is irrelevant to the court's inquiry.

15

only was the charge upheld, but the charge was based on language that he wrote. And, as already explained, the court concludes that his words were clearly insolent. Thus, Massenburg's stated reasons find strong support in the record.

The only evidence in the record that could possibly lend any support to causation here is temporal proximity, which can be evidence of causation in some cases. *See Foster*, 787 F.3d at 253 (explaining that courts can infer causation when the adverse action occurs shortly after a plaintiff engaged in a protected activity). To refute such evidence, defendants can offer a legitimate and permissible reason for their actions, *see Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016), as Massenburg has done here.

Furthermore, on the facts here, any temporal proximity alone cannot carry Guinn's burden to prove causation. In particular, Guinn's prolific filing of informal complaints and grievances resulted in Massenburg accepting and processing approximately 85 informal complaints and 9 regular grievances over a period of eighteen months, not including those rejected at intake. Given the frequency of his filings, *any* disciplinary charge filed at *any* time was reasonably likely to have been preceded by Guinn's utilization of the grievance process. Thus, the evidentiary force of temporal proximity here is particularly slight and, by itself, that proximity alone cannot defeat summary judgment in Massenburg's favor.

### 2. Henderson

As to defendant Henderson, Guinn alleges that the strip search conducted of him as he was leaving the law library constituted retaliation by Henderson. Assuming for purposes of this opinion that Guinn can establish the first and second elements of a claim, he still cannot establish the third element of his claim. Henderson has in fact denied that he even knew at the time that Guinn had filed any complaints or grievances against Massenburg. (Henderson Aff. ¶ 4.) Guinn presents no competent evidence to the contrary. This alone entitles Henderson to summary

judgment. *See, e.g.*, *Constantine*, 411 F.3d at 501 ("In order to establish [a] causal connection, a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of [him] engaging in protected activity.").

Henderson also flatly denies that he harbored any retaliatory motive. (Henderson Aff. ¶ 4.) And, as Massenburg did, he has presented a legitimate non-retaliatory reason for his strip-search of Guinn: the Major's order to conduct random searches of offenders leaving the law library. Guinn has presented absolutely no evidence to suggest that the Major did not request Henderson to take that action or that Henderson's decision to search Guinn was a retaliatory act.[11] His retaliation claim against Henderson fails.

### 3. Gibbs and Crumpler

Lastly, as to defendants Gibbs and Crumpler, the court believes it unlikely that a delay in sending legal mail or refusing to give a copy of a legal mail log could satisfy the second element of a retaliation claim. To satisfy the second element, a plaintiff must show that "defendant's conduct resulted in something more than a 'de minimis inconvenience' to [his] exercise of First Amendment rights." *Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006). Here, the court thinks it is unlikely that a prisoner of "ordinary firmness," *Constantine*, 411 F.3d at 500, would stop exercising his First Amendment rights in response to either of those actions. *See Hoye v. Gilmore*, 691 F. App'x 764, 765–66 (4th Cir. 2017) (concluding that a prisoner's transfer to a prison an hour farther away from his family, which he claimed made it "practically impossible" for his family to visit and impacted his ability to place long-distance calls to them, was not an adverse action); *Johnson v. Allen*, 416 F. Supp. 3d 550, 563 (E.D.N.C. 2018) (holding

---

[11] Guinn asserts that other unidentified offenders reported to him that, after the incident, Henderson referred to Guinn as an "asshole" and said he "wish[ed] he could throw . . . away" the shorts. (Compl. 5.) Guinn has not provided affidavits from any of those individuals.

that there was no adverse action by a defendant returning warrants to the plaintiff with a letter explaining why the sheriff's department could not serve them).

Regardless, Guinn cannot satisfy the third element of a retaliation claim. In particular, he presents nothing other than conjecture to support his accusation that Gibbs or Crumpler retaliated against him. Both flatly deny any retaliatory motive, and Guinn fails to present any evidence that Gibbs or Crumpler had a retaliatory motive when handling his legal mail or refusing a copy of the mail log. Nor does he point to any fact calling into question the validity of the reasons they have given for their actions or to suggest that they are mere pretext for retaliation. *Foster*, 787 F.3d at 252. It is well established that a party opposing summary judgment may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). Here, that is all that Guinn advances. Gibbs and Crumpler are entitled to summary judgment in their favor as to the retaliation claims against them.

**D. Eighth Amendment Claim Against Henderson**

As already noted, Guinn does not clearly delineate which claims he is bringing against which defendants. The court construes his amended complaint, however, as also asserting an Eighth Amendment claim against Henderson based on the strip search, which Guinn claims constituted "cruel and unusual punishment" or "excessive force." Notably, he does not allege that the manner or method in which Henderson conducted the strip search was in any way improper or that he suffered any physical or emotional injury as a result of that strip search. Indeed, most of his allegations focus less on the search itself and more on the result, which was that his shorts were confiscated and he was thus "forced" to be in his cell in his boxer shorts.[12]

---

[12] To the extent Guinn is basing his § 1983 claim on a deprivation of his property, such claim is not viable here. First of all, he admits that his property was returned. Moreover, Virginia provides an adequate post-

18

(*See, e.g.*, Compl. 8; Pl.'s 2nd Opp'n 8.)  Further, the emphasis of his complaint is not that the search was performed, but that the search (and confiscation) was retaliatory.

It appears that Guinn is advancing only an Eighth Amendment claim as to the strip search, although such claims are typically analyzed under the Fourth Amendment.  *See Jackson v. Herrington*, 393 F. App'x 348, 354 (6th Cir. 2010) (dismissing prisoner's Eighth Amendment strip search claim, but examining claim under the Fourth Amendment).  The court analyzes it under both.

To the extent his claim is properly construed as a Fourth Amendment claim, it does not entitle him to relief.  Neither Guinn nor Henderson have provided details of how the "strip search" was conducted, but Guinn has not set forth facts from which a reasonable jury could conclude that the search was unreasonable, as he must to prevail.  *See Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318 (2012) ("[C]orrectional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities."); *Bell v. Wolfish*, 441 U.S. 520, 557–60 (1979) (holding that strip searches and visual inspections of a prisoner's body cavities did not violate the Fourth Amendment, if reasonable under the circumstances); *Bushee v. Angelone*, 7 F. App'x. 182, 184 (4th Cir. 2001) (citing *Bell*, 441 U.S. at 545–46) ("Body cavity searches do not violate the Fourth Amendment if reasonable and not motivated by punitive intent.").

Here, Guinn does not assert that the search was *not* based on the reasonable security justifications, except to claim that it was retaliatory, nor has he provided any evidence to that effect.  Henderson has submitted an affidavit stating he conducted the search of Guinn "upon orders from the Major (Chief of Security) to conduct random searches of offenders leaving the

---

deprivation remedy, which forecloses Guinn's due process claim for the intentional or negligent deprivation of his property.  *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Hudson v. Palmer*, 468 U.S. 517, 532 (1984).

law library to search for drug contraband being passed in the law library." (Henderson Aff. ¶ 5, Dkt. No. 32-2.) Guinn does not offer any evidence to contradict that assertion, nor does he allege that the policy was an unreasonable one or that there was no basis to believe drug contraband was being passed in the law library. And although he speculates that the action was retaliatory, as discussed above, he has presented no competent summary judgment evidence or facts to support his assertion that Henderson acted with retaliatory intent. Accordingly, the court concludes that he does not have a viable Fourth Amendment claim.

Analyzing the claim under the Eighth Amendment, Henderson is entitled to summary judgment, whether construed as an excessive force claim or a deliberate indifference to conditions claim.

The Eighth Amendment prohibits prison officials from inflicting unnecessary and wanton pain and suffering on prisoners. *Whitley v. Albers*, 475 U.S. 312, 320 (1986). To succeed on an excessive force claim, a plaintiff must show that the prison official (1) used "nontrivial" force (objective component), *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010), and (2) acted with "wantonness in the infliction of pain" (subjective component), *Whitley*, 475 U.S. at 322. In the prison context, analysis of the subjective component "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). Guinn does not allege facts from which a jury could find that Henderson used "nontrivial force," (or perhaps, any force at all—Guinn never indicates he was touched during the search), and he does not present any facts that could satisfy the subjective component. As noted, he seems concerned about the confiscation of his shorts or the fact that the search was allegedly retaliatory, and does not assert any specific pain inflicted during the search itself.

If Guinn's Eighth Amendment claim against Henderson is analyzed as a deliberate

indifference claim, it likewise fails. Prison officials must take reasonable measures to ensure the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To make out an Eighth Amendment cruel and unusual punishment claim, a plaintiff must satisfy two prongs: first, "the deprivation of [a] basic human need was objectively sufficiently serious" and, second, "subjectively the officials acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (citing *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993)). In the context of conditions-of-confinement claims, to determine if a deprivation is sufficiently serious as to satisfy the first prong, a court must evaluate the conditions in light of contemporary standards of decency, keeping in mind that the Eighth Amendment "does not mandate comfortable prisons" but only prohibits "extreme deprivations." *Shakka*, 71 F.3d at 166. To demonstrate that the conditions are "extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions," or "demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Id.*

Construing the evidence in the light most favorable to Guinn, there is not sufficient evidence from which a reasonable jury could return a verdict in his favor on the first prong. *See Abcor*, 916 F.2d at 930. He has not alleged, let alone presented any evidence, that he suffered a serious or significant physical or emotional injury resulting either from the strip search by Henderson or from being deprived of his shorts for two days such that he had to choose between wearing boxers or his uncomfortable pants. *See Strickler v. Waters*, 989 F.2d 1375, 1382 (4th Cir. 1993) (discussing various types of conditions that might give rise to an Eighth Amendment claim and those that do not). Accordingly, the court will grant the motion for summary judgment as to Guinn's Eighth Amendment claim against Henderson.

## E. First Amendment Claim Against Gibbs[13]

Guinn's claim against Gibbs involves the alleged one-day delay in sending out his legal mail on one occasion (or perhaps, as his grievance referenced, failing to place a postmark on an envelope sent out to a court). To state a claim based on delay or nondelivery of legal mail, a prisoner must allege adverse consequences to show that the delay or nondelivery deprived him of meaningful access to the courts. *White v. White*, 886 F.2d 721, 724 (4th Cir. 1989); *see also Lewis v. Casey*, 518 U.S. 343, 350–53 (1996) (holding that to prevail on a claim of denial of court access, prisoners must demonstrate actual injury; he must show that the prison policies "hindered his effort to pursue a legal claim").

Guinn makes general allegations that he relates to his legal mail. For example, he alleges that his current detention is unlawful, that he is attempting to change it, and that he is litigating several cases. He also notes that courts strictly apply their deadlines concerning filings. But he does not allege, let alone provide any evidence, that any of his cases were dismissed or his claims before any court were not considered because of the alleged mishandling of his legal mail by Guinn. In short, he presents no evidence that his efforts to pursue his legal claims were hindered in any way. Thus, even if the court were to assume that there was a one-day delay and a failure to properly postmark Guinn's envelope, and that Gibbs was responsible, Guinn has failed to state an adequate claim.

Guinn also speculates in his amended complaint that he believes his incoming legal mail "may have been opened" by Gibbs. (Am. Compl. ¶ 7.) In his opposition, he states more strongly that Gibbs "has in fact opened my incoming legal mail" outside of his presence in an attempt to find out what Guinn is doing and filing. (Pl.'s 2nd Opp'n 7.) As evidence of this, Guinn presents

---

[13] To the extent that Guinn's original or amended complaint also brought a First Amendment claim against Crumpler, that claim would fail for the same reasons the claim against Gibbs fails.

evidence showing that two pieces of his legal mail were opened outside his presence on a single occasion in October 2018.

This incident occurred months *after* the filing of the amended complaint in June 2018, and Guinn never sought leave to amend to add this claim. To the extent any of his filings could be construed as a motion to amend, the court would deny leave to amend this claim as futile. First of all, given the timing, it is clear that this particular incident was not properly exhausted *prior* to Guinn's filing suit, and it is therefore not properly before the court. *See e.g.*, *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 675 (4th Cir. 2005) (stating that the Prison Litigation Reform Act requires exhaustion "before filing an action"); *see also Hayes v. Stanley*, 204 F. App'x 304, 304 n.1 (4th Cir. 2006) ("We conclude that the defect in this case [the failure to exhaust administrative remedies] can only be cured by something more than an amendment to the complaint . . . .").

Second, the allegation fails to state a constitutional violation based on the record evidence before the court. Guinn includes copies of two envelopes addressed to Guinn, both received on October 26, 2018, in the Green Rock mailroom. One was from the Clerk of Pittsylvania Circuit Court, and one was from the Office of the County Attorney in Pittsylvania County. On each one is a handwritten notation that says, "(2) peices [sic] of mail accidentally open[ed] while training new staff in mailroom. Sorry. Gibbs." (Dkt. No. 36-1 at 3, 4.)

Guinn filed an informal complaint concerning this incident, to which Gibbs responded as follows:

> First, your 2 pieces of Legal mail was open in error no other reason than human error as I stated in note that I attached apologizing and as stated when meeting with you on October 30 2018. Your two letters were on the top of the legal mail pile of 11 other pieces of mail not 30 as you state. Nothing in either envelope was tampered with or even [taken] out of envelope by mailroom staff before being taped back up. I respect the privacy of others and their legal matters

so I can assure you this was not deliberate.

(Dkt. No. 36-1 at 7.)  Guinn then filed a grievance, which Massenburg denied because the issue did not cause him loss or harm, explaining, "It was a human error.  It wasn't read.  Trainee made a mistake."  (Dkt. No. 36-1 at 8–9.)  Thus, while Gibbs has not submitted an affidavit in this case concerning this incident, the record clearly reflects that Gibbs immediately apologized, explained that it was a mistake, and stated that no one had actually read Gibbs's mail.

Guinn offers no evidence based on personal knowledge to support his bald assertion that the opening of the mail was deliberate.  And significantly, numerous courts have held that the negligent or inadvertent opening of legal mail outside the presence of an inmate, in isolated instances, does not constitute an independent constitutional violation.  *See El-Amin v. United States*, No. 1:18-00282, 2018 WL 5993582, at *6 n.8 (W.D. Va. July 31, 2018) (collecting authority so holding).  Here, the record reflects that the opening was inadvertent, and Guinn has presented no evidence to contradict that.  Accordingly, this claim fails and is subject to dismissal.

**F.  Miscellaneous Allegations Against Davis**

As noted, Guinn also accuses Davis of two other instances of misconduct outside the grievance process.  The first concerns the "Johnny Cochran" notation on Guinn's disciplinary conviction (*see* Dkt. No. No. 8-2 at 3); the second is Davis's alleged failure to investigate the strip-search incident for "several days."  Davis is entitled to summary judgment as to any federal claims arising from these allegations.

First, even assuming it is true that the handwritten note saying "Johnny Cochran" was written by Davis, was a reference to Guinn, and was meant to be insulting (none of which are obvious from the document), that does not give rise to an actionable constitutional violation.  *Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005) ("Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983.") (citing *Collins v. Candy*,

603 F.2d 825, 827 (10th Cir. 1979)).

As to Davis's delay in investigating (or even a failure to investigate) Henderson's strip-search of Guinn, that allegation does not state a claim, either. Even if Davis told him Guinn would look into the incident and failed to do so, the court has already concluded that there was no constitutional violation resulting from the strip search, and Guinn's shorts were returned to him within days. So, there was no underlying violation for Davis to investigate. In any event, Guinn has not cited to any authority for the proposition that Davis had a duty to investigate, even upon saying he would look into it. *Cf. Burks v. Raemisch*, 555 F.3d 592, 595–96 (7th Cir. 2009) (holding that persons within prisons all have different roles to play, and noting that "[p]ublic officials do not have a free-floating obligation to put things to rights . . ."). Instead, Section 1983 requires a plaintiff to show that a specific defendant personally violated the plaintiff's constitutional rights. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (explaining that liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally" in the violation of plaintiff's rights and affirming dismissal of claim where plaintiff did not allege personal involvement by defendant) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). Here, Davis's alleged failure to investigate the strip search did not violate any right of Guinn's. Accordingly, there is no basis for holding Davis liable for a supposed failure to promptly investigate or to investigate at all.

## G. State Law Claims[14]

The court has determined that Guinn's federal claims must be dismissed, and the court declines to exercise supplemental jurisdiction over any state law claims raised by Guinn. Thus,

---

[14] Because Guinn's state law claims were not clearly set out in his complaint, defendants have not presented any arguments in their summary judgment motion regarding them.

they will be dismissed without prejudice.

III. CONCLUSION

For the reasons stated herein, defendants' motion for summary judgment will be granted.

An appropriate order will be entered.

Entered: April 3, 2020.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge